By a will which was probated May 21st, 1768, Francis Miles gave and devised the land and premises described in the bill to the township of Lower Penns Neck, in the county of Salem, the income thereof to be appropriated toward the education and schooling of the poor children of said township. Since said time the premises have been leased by the township to various tenants.
On March 25th, 1924, the township committee entered into an agreement with the defendant, Samuel Ecret, wherein they leased said premises to Ecret for the years 1925, 1926, 1927 and 1928, at a rental therein named.
In said agreement was the following clause:
"The party of the second part agrees to keep the premises in good farm-like manner, and upon the expiration of this agreement the farm shall be in as good condition as at the beginning."
This farm is practically a parallelogram extending from the main road leading from Salem to Pennsville, westwardly to the Delaware river.
At one time there existed along the river edge a bank with sluices so built and arranged to exclude the tidal waters from flowing over and upon the meadows along that portion of the farm. At the time of the lease or agreement, this bank did not exist, it having previously been permitted to be washed away.
Since the occupancy of said Ecret, he has caused or permitted to be erected a bank without sluices, along the river's edge, approximately, but not exactly, in the location of the old bank, in some place, at least, twenty or thirty feet from the old location. This bank was evidently built not for the sole purpose of excluding the tidal waters, but for use as a roadway, it having been built much wider than the usual bank, and of sufficient width to permit the passing of automobiles.
After consideration, I find no reason to change my views as expressed at the hearing, i.e., that there was no proof of damage in the building of this bank. I so find. *Page 665 
In addition to the building of the bank, Ecret caused or permitted a road to be laid out across the farm, along the meadow edge of the upland, in some places along and across the tillable land, at others along the meadow.
This roadway was a passageway over the farm, no gravel or other surface materials (other than the soil over which it passed) was used, and it can be plowed over and replaced with no substantial difficulty.
It is evident that no irreparable damage has been done to the farm, and that the use of that portion of the farm as a roadway is not a waste.
There is, however, one further question to be considered.
Upon each side of the farm there are real estate developments, and no highway exists leading from one to the other. The main highway above referred to being the only available passage from one to the other.
The contention of the complainant is, that these roads, one upon the river bank and the other along the meadow edge, connects with the streets of the real estate developments, the latter by way of a bridge erected across a creek along the side of the farm in question, that persons who buy lots on either side of this farm may, and probably will do so, in the belief that they have the right to use these roads for the purpose of access to their prospective homes, and that by reason thereof the defendant is fraudulently deceiving the public.
It is unnecessary to determine whether such a use of the land would constitute a deception and fraud upon the public sufficient to justify this court in granting relief, as there is no proof that anyone has been deceived or that any attempt has been made to so deceive. Nor is there any proof that said roads are being generally used by the public, although there is no doubt that they could be so used.
The bill must be dismissed. *Page 666